UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EATON & VAN WINKLE, LLP, as the Plan Administrator of the EATON & VAN WINKLE LLP 401(k) PROFIT SHARING PLAN, | **ORDER** |
| Plaintiff, | 17 Civ. 6118 (PGG) |
| -against- | |
| YUNLING REN and CHRISTINE WALDBAUM, | |
| Defendants. | |
| YUNLING REN, | |
| Plaintiff, | |
| -against- | 17 Civ. 1535 (PGG) |
| THE PLAN ADMINISTRATOR OF EATON & VAN WINKLE LLP 401(K) PROFIT SHARING PLAN and MAXIM WALDBAUM, | |
| Defendants. | |

PAUL G. GARDEPHE, U.S.D.J.:

    The Plan Administrator of the Eaton & Van Winkle LLP 401(k) Profit Sharing Plan brings this interpleader action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to resolve competing claims to a 401(k) account. Maxim Waldbaum is a participant in the Eaton & Van Winkle LLP 401(k) Profit Sharing Plan (the "Plan"). Defendant Yunling Ren, the current spouse of Maxim Waldbaum, contends that she has marital property rights to his Plan account, for which she is the designated beneficiary.

Christine Waldbaum, Mr. Waldbaum's former spouse, contends that his Plan account has been assigned to her pursuant to a "qualified domestic relations order" issued by a New Jersey state court.

This Court previously denied Ren's motion for summary judgment and motion to dismiss. Ren has moved for reconsideration. (Dkt. No. 52) Christine Waldbaum has moved for summary judgment. (Dkt. No. 59) For the reasons set forth below, Ren's motion for reconsideration will be denied, and Christine Waldbaum's motion for summary judgment will be granted.

## BACKGROUND

This Court assumes familiarity with the facts of this case, which are explained in detail in this Court's March 26, 2019 order. (Dkt. No. 49) Ren has moved for reconsideration of that order. (Dkt. No. 52) Christine Waldbaum opposes Ren's motion for reconsideration and seeks summary judgment and an order (1) declaring that Ren does not have a competing interest in Maxim Waldbaum's 401(k) account with Eaton & Van Winkle, LLP; and (2) directing Eaton & Van Winkle, LLP, as the plan administrator of the Eaton & Van Winkle LLP 401(k) Profit Sharing Plan, to disburse the funds in Maxim Waldbaum's 401(k) account, in full, to Christine Waldbaum. (Dkt. No. 59)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Motion for Reconsideration

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is

an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (second alteration in original) (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id.

## B. Summary Judgment

Summary judgment is warranted when a moving party shows that "there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'" Lesavoy v. Lane, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, a court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Eviner v. Eng, No. 13 Civ. 6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).

C. **Declaratory Judgment**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction... any court of the United States... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act thus "confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" Peconic Baykeeper, Inc. v. Suffolk Cnty., 600 F.3d 180, 187 (2d Cir. 2010) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).

In determining whether declaratory relief is warranted, "[t]he court must consider whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Camofi Master LDC v. Coll. P'ship, Inc., 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)). When a court determines that either of these conditions is satisfied, it is "required to entertain a declaratory judgment action." Starter Corp. v. Converse Inc., 84 F.3d 592, 597 (2d Cir. 1996)).

II. **ANALYSIS**

A. **Motion for Reconsideration**

In her motion for reconsideration, Ren seeks to relitigate issues already decided by this Court, and to raise new arguments that are not appropriate for a reconsideration motion. This Court will briefly explain why each of her arguments is unpersuasive.

First, Ren takes issue with this Court's use of the term "unmatured" to describe her right to the 401(k) account, citing a New Jersey case to argue that her right is "unquestionably a property right." (Ren Reconsideration Br. (Dkt. No. 52) at 1-2) Ren further

5

claims that, in interpreting "cases on division of marital properties upon divorce," this Court erroneously found "that married women could only have independent property rights upon divorce." (Id. at 2)

This Court addressed Ren's argument in its March 26, 2019 Order, noting that she had conceded that her rights to the 401(k) account "'are unmatured,'" because her husband "is not deceased and has not retired." (March 26, 2019 Order (Dkt. No. 49) at 12 (citing Ren Br. (Dkt. No. 37) at 15) (citing Majauskas v. Majauskas, 61 N.Y.2d 481, 485-86 (1984)) The Court concluded that given these circumstances, and the fact that "neither Ren nor Mr. Waldbaum ha[s] brought divorce proceedings against the other, Ren is not currently entitled to any portion of Mr. Waldbaum's 401(k) Plan account under New York law." (Id.) This Court did not rule that Ren had no property right, but instead concluded that "Ren does not have a current claim to Mr. Waldbaum's 401(k) Plan account under New York Domestic Relations law." (Id.) Ren's rehashed argument on this point provides no basis for reconsideration.

Ren further argues that "New York Domestic Relations law and ERISA consistently grant[] the marital property rights" to her, and so "there cannot be any preemption." (Ren Reconsideration Br. (Dkt. No. 52) at 2) She also complains that this Court "effectively eliminated [her] beneficiary status under ERISA. . . ." (Id.) As stated above, however, Ren has no current claim to her husband's 401(k) Plan account under New York law, and "ERISA's qualified domestic relations order provision" explicitly authorizes the determination made by this Court. (March 26, 2019 Order (Dkt. No. 49) at 13)

Ren also objects to this Court's reliance on Yale-New Haven Hospital v. Nicholls, 788 F.3d 79 (2d Cir. 2015), arguing that this case stands for the proposition that "the first wife is only entitled to the retirement funds accumulated during her marriage." (Ren Reconsideration

6

Br. (Dkt. No. 52) at 2) This Court cited Nicholls for the proposition that "a surviving spouse can 'lose' his or her putative interest to an alternative payee." (March 26, 2019 Order (Dkt. No. 49) at 14 (quoting Nicholls, 788 F.3d at 88)) The analogy to Nicholls is valid, even though Maxim Waldbaum is not yet deceased, because it demonstrates that a current spouse can lose an unmatured interest pursuant to a "qualified domestic relations order." Accordingly, Ren's argument provides no basis for reconsideration.

Ren further complains that this Court failed to recognize that a "qualified domestic relations order" "can only be applicable to the ERISA rights between the estranged couples[,] . . . [not] a third-party's property right." (Ren Reconsideration Br. (Dkt. No. 52) at 2) Ren also takes issue with this Court's "treatment of NJ Superior Court's Order as [a] QDRO." (Id.)

In the March 26, 2019 Order, this Court held that, "pursuant to ERISA, 29 U.S.C. § 1056(d)(3)(B)(i)-(ii), the New Jersey Superior Court was authorized to award Mr. Waldbaum's 401(k) Plan account to an alternate payee such as Defendant Waldbaum." (March 26, 2019 Order (Dkt. No. 49) at 14) As discussed above, Nicholls demonstrates that a "qualified domestic relations order" can affect a third-party's unmatured interest in a 401(k) account. Ren's arguments to the contrary were rejected in the March 26, 2019 Order. (Id. at 14, 18)

Ren also complains that this Court "vacated the [April 3, 2017] Consent Decree . . . without any evidence or testimony." (Ren Reconsideration Br. (Dkt. No. 52) at 3) This Court correctly vacated the April 3, 2017 consent decree "[b]ecause Defendant [Christine] Waldbaum was a necessary party" and had not been served. (March 26, 2019 Order (Dkt. No. 49) at 16-17)

Ren's reply brief raises two new arguments. First, she claims that "the surviving spouse benefits in the ABA Plan had been fully vested to Ms. Ren, although the payments of such benefits are deferred to a future time." (Ren Reply (Dkt. No. 64) at 6) Second, she claims that the New Jersey Superior Court's April 10, 2017 order "is invalid for missing a necessary party." (Id. at 22)

As an initial matter, new arguments cannot be raised for the first time in a reply brief. See, e.g., Scott v. Westchester Cty., No. 18 CV 7203 (VB), 2020 WL 364251, at *4 (S.D.N.Y. Jan. 22, 2020) ("Arguments made for the first time in a reply brief need not be considered by a court.") (internal quotation marks omitted); Tutor Time Learning Centers, LLC v. GKO Grp., Inc., No. 13 Civ. 2980 (JMF), 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013) ("[A]rguments raised for the first time in a reply memorandum . . . need not be considered."); see also United States v. Sampson, 898 F.3d 287, 314 (2d Cir. 2018) ("[I]t is well-settled that we will not usually entertain an argument made for the first time in a reply brief.").

In any event, Ren has offered no support for her claim that her interest in the 401(k) account was fully vested. As to the validity of the New Jersey Superior Court's April 10, 2017 order, any challenges to that order should have been raised in the New Jersey action. As this Court notes in the March 26, 2019 order, an appeal was taken from that order, but the New Jersey Appellate Division "did not disturb the Superior Court's order concerning liquidation of Mr. Waldbaum's 401(k) Plan account and payment of child support arrears." (March 26, 2019 Order (Dkt. No. 49) at 18 (citing Waldbaum v. Waldbaum, No. A-1838-15T3, 2017 WL 6577410, at *1 (N.J. Super. Ct. Dec. 26, 2017)))

Ren has offered no argument that would justify reconsideration. Accordingly, her motion for reconsideration will be denied.

8

### B. Summary Judgment

Christine Waldbaum has moved for summary judgment on her request for a declaration "that the contents of Maxim [Waldbaum's] 401(k) should be immediately distributed, in full, to Ms. Waldbaum." (Christine Waldbaum Br. (Dkt. No. 60) at 20) Christine Waldbaum argues that, under the law of the case doctrine, this Court has already decided all issues necessary for summary judgment.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" See DiLaura v. Power Auth. of State of New York., 982 F.2d 73, 76 (2d Cir. 1992) (quoting Liona Corp. v. PCH Assocs. (In Re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. 1991)). In the March 26, 2019 order, this Court found that: (1) "Ren is not currently entitled to any portion of Mr. Waldbaum's 401(k) Plan account under New York law"; (2) "pursuant to ERISA, 29 U.S.C. § 1056(d)(3)(B)(i)-(ii), the New Jersey Superior Court was authorized to award Mr. Waldbaum's 401(k) Plan account to an alternate payee such as Defendant [Christine] Waldbaum"; (3) "[the New Jersey] court's order addressing Mr. Waldbaum's arrears constitutes a valid qualified domestic relations order"; and (4) "the April 3, 2017 consent decree entered in 17 Civ. 1535 must be vacated." (See March 26, 2019 Order (Dkt. No. 49) at 12, 14-16) That decision is law of the case. Ren does not argue that the law of the case doctrine is inapplicable.

Because this Court has determined that Ren is not entitled to the contents of the 401(k) account and that Christine Waldbaum is entitled to these funds, there are no material issues of fact that would make summary judgment improper. Moreover, declaratory judgment is plainly appropriate in the interpleader action, where two parties have asserted rights to the same property.

9

Accordingly, this Court declares that Yunling Ren does not have a competing interest in Maxim Waldbaum's 401(k) account with Eaton & Van Winkle, LLP, and directs that Eaton & Van Winkle, LLP, as the plan administrator of the Eaton & Van Winkle LLP 401(k) Profit Sharing Plan, immediately disburse the funds in Maxim Waldbaum's 401(k) account, in full, to Christine Waldbaum.

## CONCLUSION

For the reasons stated above, Ren's motion for reconsideration is denied. Christine Waldbaum's motion for summary judgment is granted. Eaton & Van Winkle, LLP is directed to disburse the funds in Maxim Waldbaum's 401(k) account to Christine Waldbaum forthwith. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 52, 59), close the cases, and mail a copy of this order to pro se Defendants Yunling Ren and Maxim Waldbaum.

Dated: New York, New York
      March 16, 2020         SO ORDERED.

_____
Paul G. Gardephe
United States District Judge